## BANK OF HAVANA *a.* WICKHAM.

*Supreme Court, Sixth District; General Term, January,* 1857.

### CORPORATION.—PLEADING.

An individual banker commencing and carrying on business under the General Banking Act of 1838, and the acts amending the same, is a corporation sole.

As such he may assume a corporate name, as well as might an association of several persons.

An action by such banker upon a cause of action accruing to him as such, is properly brought in the corporate name.

The allegation of the corporate character of the plaintiff is not in general an allegation of a fact constituting the plaintiff's cause of action, but merely of a fact to show his legal capacity to sue; and the objection that the corporate capacity is not alleged is waived, if not taken by demurrer.

*It seems,* that if the plaintiff sues in a corporate name, but neglects to allege his corporate character, the complaint is demurrable upon the ground that it shows upon its face that the plaintiff has not legal capacity to sue.

To put the plaintiff to proof of his corporate capacity in such a case, a general denial is not sufficient, but the answer must deny the existence of such a corporation.

Appeal from a judgment rendered upon trial before a judge at special term.

This was a *creditor's action* brought by Charles Cook, an individual banker, under his corporate name of the Bank of Havana, against G. C. Wickham, who was his judgment debtor, and Martha Wickham, his wife, and certain others, who were transferrees of property belonging to Wickham.

The plaintiff had recovered a judgment against the defendant, George C. Wickham, for the sum of $5022.84, on the 8th day of January, 1852. Upon which an execution against the property of said Wickham had been duly returned wholly unsatisfied. The object of this action was to set aside as fraudulent a deed of several lots of land in Tompkins county, which was executed by the defendants Wickham and wife, to the defendant Magee, on the 29th day of November, 1851. Also to set aside as fraudulent a sale of personal property made at the same time by Wickham to Magee. Also to set aside as fraudu-

lent a deed of a portion of said land, and a conveyance of a portion of said personal property executed at the same time by Magee to the defendant Waddell, in trust for the defendant Martha Wickham. The plaintiff demanded judgment, that the real and personal property so conveyed and transferred as aforesaid, be declared liable to pay the plaintiff's judgment against Wickham, or that the plaintiff's judgment against Wickham be paid out of any money due to Magee or the Stueben County Bank, from any persons to whom the land had been contracted to be sold by Magee. Also for such other relief as might be just.

The indebtedness upon which the plaintiff's judgment against Wickham was recovered, existed prior to the date of the deed to Magee, and Magee knew of such indebtedness at the time the deeds and transfers were executed. Wickham, at the same time he made the deed to Magee, was insolvent, and was justly indebted to the latter in the sum of $1500, and to the Steuben County Bank, of which Magee was president, in the sum of $12,500. Magee took that portion of the land and personal property which he retained in satisfaction of the debts due to him and the Steuben County Bank from Wickham, Magee paying the debt to the bank. Mrs. Wickham had a contingent right of dower in the lands, and she joined in the deed to Magee. But the latter in consideration thereof immediately transferred to the defendant Waddell, in trust for Mrs. Wickham, a portion of the personal property he received from her husband, and he also at the same time conveyed to Waddell in trust for Mrs. Wickham about 70 acres of the land. The defendants Graham, Ely, Smith, and Matthews had taken contracts or deeds for portions of the land from Magee, prior to the commencement of this action.

The defendants interposed separate answers to the complaint. The complaint began thus: " The Bank of Havana, the plaintiff in this suit." There was no direct allegation in the complaint that the plaintiff is a corporation, or that the plaintiff has legal capacity to sue. Nor was the title of any act, or the date of the passage of any act referred to in the complaint, by or under which the plaintiff claims to have a legal existence. Neither Magee nor Wickham specifically denied in his answer that the plaintiff was a corporation; nor did either of them allege that

the plaintiff had not legal capacity to sue. But they severally denied all allegations in the complaint of fraud, and gave their versions in their answers of the transactions complained of.

The action was tried at a special term of the court, held in Tompkins county in December, 1853. Much evidence was given upon the question of fraud in the transactions, and several exceptions were taken touching the admissibility of evidence. The certificate of the superintendent of the bank department given in evidence upon the trial, showed that Charles Cook was an individual banker at Havana, N. Y., under the general banking law of 1838; and that he did his business as such banker in and by the name of "The Bank of Havana." The judge dismissed the complaint as to all of the defendants, except Magee and George C. Wickham, for the reason stated by him, that the plaintiff had failed to prove itself a corporation with power to sue, such defendants having put that fact in issue. But he held that the defendants Wickham and Magee had not by their answers denied the plaintiff's corporative capacity to sue, and had therefore admitted such capacity.

The judge found that the value of the real and personal estate which Wickham conveyed to Magee on the 29th day of November, 1851, was $18,000. That the value of that portion of said real and personal estate which Magee conveyed to Waddell in trust for Mrs. Wickham, was $4500; that the same was of greater value than Mrs. Wickham's contingent right of dower in the whole real estate that Wickham and wife conveyed to Magee; that the inducement held out to Wickham by Magee to convey the property to the latter, and which, in fact, caused Wickham to make such conveyance, was the promise of Magee that he would not strip him of all his property, but that he would so fix it that Wickham should have a living out of the same. That the conveyance of a portion of the property by Magee to Waddell, in trust for Mrs. Wickham, was made for the purpose, and with the intent to secure the same for the use of her husband, and to place the same beyond the reach of the plaintiff. That the conveyance of the entire property from Wickham to Magee was made and received with intent to hinder, delay, and defraud the plaintiff, and that sufficient moneys had come to the hands of Magee from a resale of such property to pay the claim of the plaintiff.

It is unnecessary to further notice the finding of the judge upon the facts. He adjudged and determined, as a conclusion of law, that the conveyance of the property from Wickham to Magee was fraudulent and void; and that Magee and Wickham pay to the plaintiff the amount of the plaintiff's judgment against Wickham, with interest thereon, and the costs of this suit as against them.

Wickham and Magee took exceptions to the finding of the judge upon questions of fact; also to his finding the aforesaid conclusion of law.

Judgment was entered for costs against the plaintiff in favor of all the defendants except Wickham and Magee; and in favor of the plaintiff against Wickham and Magee for the amount due upon the plaintiff's judgment against Wickham ($6217.03), and $429.42 costs; in all, $6646.45.

Wickham and Magee appealed from the judgment against them to the general term.

*David Rumsey*, for the appellants.

*S. A. Foot*, for respondent.

BY THE COURT.—BALCOM, J.*—" The Bank of Havana" is the name in which Charles Cook, an individual banker, carries on the business of banking at Havana, N. Y., under " An act to authorize the business of banking," passed April 18, 1838, and the several acts amending the same. The certificate of the superintendent of the bank department, that was given in evidence upon the trial, states that Cook commenced the banking business as an individual banker at Havana in 1851, under the aforesaid acts. Is the plaintiff a corporation? The appellants' counsel contends the plaintiff is not a corporation, and therefore has no legal capacity to sue. It is now well settled that banking associations formed under the aforesaid acts are moneyed corporations. (Gillet *a.* Moody, 3 *Comst.*, 479; see *Const.*, Art. 8, section 3.) By chapter 340 of the *Laws of* 1848, individual bankers are declared to be " banks of discount and deposit, as well as of circulation;" and every report directed to be made by any law, from an individual banker, must be veri-

* Present, GRAY, MASON, and BALCOM, JJ.

fied by the oath of his president and cashier. The term *association* is made to include every individual doing business alone for some purposes under the banking laws. (Chap. 437, *Laws of* 1849.) Individual bankers are required to have fixed and designated locations for the transaction of the usual banking business. (Chap. 340, *Laws of* 1848.) And unless they are corporations it is difficult to see how, in case of their insolvency, the constitution gives the holders of their bills preference in payment over all their other creditors. (See *Const.*, Art. 8.) They are taxed in the same manner, and to the same extent, that banking associations are. They are not entitled to any reduction in the assessment of their banking capital for their debts. (*Laws of* 1847, vol. 2, p. 521, § 4, chap. 419.)

After a careful examination of the statutes authorizing and regulating the business of banking, I have come to the conclusion that an *individual banker* is a " corporation sole." There is no express declaration in any statute to this effect, but individual bankers are clothed by statute with legal capacities and advantages which, as natural persons, by the common law they could not have ; and " no particular form of words is requisite to create a corporation." (2 *Kent's Com.*, 276.) Kent says : " A corporation *sole* consists of a single person, who is made a body corporate and politic, in order to give him some legal capacities and advantages, and especially that of perpetuity, which as an individual person he could not have. A bishop, dean, parson, and vicar are given in the English books as instances of sole corporations." (2 *Kent's Com.*, 273.) Perpetuity is not absolutely necessary to make an association, or a single person a corporation. The existence of a corporation may be limited to any number of years, or to the life of a person ; therefore, what Kent says about perpetuity being a legal capacity or advantage possessed by an individual when a corporation sole, has no controlling force. The statute prohibiting individual bankers from selling or transferring the business of banking upon the securities deposited by them, was not passed until after this action was tried. (*Laws of* 1854, p. 554, § 9.) " As a general rule, a fee will not pass to a corporation sole without the word successor, and it will continue for the life only of the individual clothed with the corporate character." (2 *Kent's Com.*, 273 ; 2 *Blackstone's Com.*, 431.) This was the common-

law rule, but it has been changed by statute in this State. (1 *Rev. Stats.*, 748, §1; Nicoll *a.* The New York and Erie R. R. Co., 2 *Kern.*, 121.)

If an individual banker is a corporation sole, there can be no more objection to such banker taking any corporate name he shall choose to adopt, or to Mr. Cook being a corporation by the name of " The Bank of Havana," than there is to an individual being a corporation by the name of bishop, dean, parson, or vicar, which, as has been seen, is allowable under the English law. If these are correct conclusions, the proof established the plaintiff's legal capacity to sue; and this action was properly brought in the name by which Mr. Cook transacts his banking business. There was no necessity for bringing it in Mr. Cook's name, *as president* of the Bank of Havana. (The People *a.* Assessors of Watertown, 1 *Hill*, 621; Gillet *a.* Moody, 3 *Comst.*, 486; *Const.*, Art. 8, § 3; 1 *Rev. Stats.*, 599, § 1; The East River Bank *a.* Judah, 10 *How. Pr. R.*, 135.)

But suppose the proof failed to establish that the plaintiff is a corporation, the question arises, was the judge right in holding that the appellants by not denying in their answers the corporate capacity of the plaintiff to sue, thereby admitted such capacity? This would clearly be so, had there been a direct allegation in the complaint that the plaintiff was a corporation. (*Code*, § 168.) The only statement in the complaint, aside from the title of the action, which imports that the plaintiff is a corporation, is in these words, viz.: " The Bank of Havana, the plaintiff in this suit." Is this a sufficient averment to show the plaintiff has legal capacity to sue? The Revised Statutes provide that, " in actions by or against any corporation created by *or under* any law of this State, it shall not be necessary to recite the act or acts of incorporation, or the proceedings by which such corporation was created, or to set forth the substance thereof, but the same may be pleaded by reciting the title of such act, and the date of its passage." (2 *Rev. Stats.*, 459, § 13.) Section 471 of the Code declares that the second part thereof, which prescribes the manner of pleading in actions, shall not affect " any statutory provisions relating to actions not inconsistent with this act, and in substance applicable to the actions hereby provided." Mr. Justice Mitchell has held that " banks created under the general banking law, when suing should recite the title of the

act, and the date of its passage under which proceedings were had for its incorporation." (Johnson, President, &c. *a.* Kemp, 11 *How. Pr. R.*, 186 ; see, also, Bank of Lowville *a.* Edwards, *Ib.*, 216.) And I am of the opinion he has given the correct construction to the statute above quoted, when questions as to the correctness of pleadings under it are properly raised by demurrer. (See Onondaga County Bank *a.* Carr, 17 *Wend.*, 443.) Now assuming that the complaint in this action should have recited the title of the act, and the date of its passage, under which the plaintiff claims to have a legal existence, then the complaint upon its face does not show that the plaintiff has legal capacity to sue. And as section 144 of the Code has been construed, the complaint shows upon its face that the plaintiff had *not* legal capacity to sue, and for this cause was demurrable. (11 *How. Pr. R.*, 186 ; *Ib.*, 216.) This construction of section 144 of the Code is probably based upon the assumption that the complaint is presumed to show all the legal capacity to sue that a plaintiff has ; and, therefore, when such legal capacity to sue does not appear from the complaint, it is deemed to show affirmatively that the plaintiff does not possess any legal capacity to sue. By the same authorities the complaint in this action was not demurrable on the ground that it does not state facts sufficient to constitute a cause of action. (11 *How. Pr. R.*, 216.) But it could have been objected to by demurrer for the reason that it appears upon the face thereof, that the plaintiff has not legal capacity to sue. (*Code*, § 144, subd. 2 ; 11 *How. Pr. R.*, 186 ; *Ib.*, 216.) As the appellants took no objection by demurrer or answer that the plaintiff had not legal capacity to sue, by sections 147 and 148 of the Code they are "deemed to have waived the same." Had it, however, been necessary to set forth in the complaint that the plaintiff is a corporation, to make the complaint, "state facts sufficient to constitute a cause of action," then the defendant could have taken advantage of the defect in the complaint upon the trial. (*Code*, § 148.) But the capacity of the plaintiff to sue has been held to be independent of the cause of action. (11 *How. Pr. R.*, 216.)

Again, if the decision in the Bank of Lowville against Edwards (11 *How. Pr. R.*, 216), is to be upheld, the complaint in this action states facts sufficient to constitute a cause of action, although it does not recite the title of the act and the date of its

passage under which proceedings were had for the plaintiff's incorporation. Upon this assumption it was not necessary for the plaintiff to prove its corporate existence on the trial. Prior to the Revised Statutes such proof was necessary where the general issue alone was pleaded. (8 *J. R.*, 378; 2 *Cowen*, 778; 7 *Wend.*, 540.) But by such statutes it is provided, "In suits brought by a corporation created by *or under* any statute of this State, it shall not be necessary to prove on the trial of the cause the existence of such corporation, unless the defendant shall have pleaded in abatement or in bar, *that the plaintiffs are not a corporation.*" (2 *Rev. Stats.*, 458, § 3.) This statute is still in force, and it is applicable to actions under the Code. (Code, § 471.) Had the appellants in their answers denied each and every allegation in the complaint, the plaintiff would not have been obliged to show its corporate existence. To put the plaintiff to proof of that fact, the defence of *nul tiel corporation* must be set up by answer. The case of The Proprietors of the Common and Undivided Land and Meadows of Southhold *a.* Horton (6 *Hill*, 501), relied upon by the appellants' counsel, does not establish a different proposition. That was an ejectment suit, in which, by the statute then in force, a defendant might demur to the declaration, or "plead the general issue *only.*" (2 *Rev. Stats.*, 306, § 22 ; see 17 *Wend.*, 443 ; 1 *Denio*, 452.)

There is sufficient unexceptionable evidence in the case to sustain the finding of the justice upon the questions of fact. The judgment of the special term should therefore be affirmed, with costs.

Mason, J., concurred.

Gray, J., expressed no opinion in the case.

Judgment affirmed with costs.